UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                      CASE NO. 8:11-cv-2840-T-23AEP

HAROLD Z. STEINBRENNER and
CHRISTINA L. STEINBRENNER,

    Defendants.
_____/

**ORDER**

This is a dispute about a tax refund that the United States (more descriptively, the Internal Revenue Service or IRS) initially granted but now seeks to recover. The taxpayers move (Doc. 16) for summary judgment, and in response the IRS moves (Doc. 17) for summary judgment. Because the IRS concedes the taxpayers' entitlement to the refund if the taxpayers' demand was timely, a determination of the applicable statute of limitation resolves this action. But the considerations that identify the applicable limitation reside discretely among the forbidding arcana of partnership taxation, a subject intractably muddled by archaically and chaotically composed – and, therefore, nearly inscrutable – statutes and regulations and by the bold proliferation and proud maintenance of abstruse distinctions and obscure

jargon. The burden of exploring this particular thicket in the Internal Revenue Code is mitigated (but, alas, not completely) by the parties' useful stipulation of fact.

*****

Harold Steinbrenner[1] is a beneficiary of a family trust that is an "indirect partner"[2] in YankeeNets LLC through the intervening partnership Yankees Holdings, L.P. YankeeNets and Yankees Holdings are subject to unified partnership audit under the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, 96 Stat. 324.

In 2006, after an IRS examination, YankeeNets, Yankees Holdings, and the IRS settled a tax dispute, which included the tax treatment of an asset sale reported on YankeeNets 2001 return as a long-term capital gain. The IRS accepted the settlement formally on March 1, 2007 (the IRS claims the two-year limitation runs from that day). The IRS settlement requires Yankees Holdings to treat a portion of the reported long-term capital gain as ordinary income. Among other things, the settlement increased the ordinary income – and consequently reduced the ordinary

---

[1] Harold and his wife, Christina, are the taxpayers in this action.

[2] "An indirect partner is any person holding an interest in a partnership through a pass-through partner." Arthur B. Willis, John S. Pennell, Philip F. Postlewaite, *Partnership Taxation* § 20.01[5]. "A pass-through partner is the nominal owner of a partnership interest through whom other persons actually have an interest in the partnership under examination. The Code refers to another partnership, an estate or trust, a[n] S corporation, a nominee, or any other type of person holding a partnership interest for the benefit of another as a pass-through partner." Arthur B. Willis, John S. Pennell, Philip F. Postlewaite, *Partnership Taxation* § 20.01[5].

net loss – reported on YankeeNets' 2002 return. About 40% of the loss "flowed through" to Yankees Holdings.

On February 7, 2008, applying the settlement agreement, the IRS adjusted the YankeeNets partnership income for 2001 and 2002, decreased the partnership's ordinary income, and increased the partnership's capital gain. After the IRS disallowed two other deductions, YankeeNets and Yankee Holdings flowed through to the family trust a large net loss for 2002. Also on February 7, 2008, the IRS issued to the family trust a notice of the adjustments – corresponding to the YankeeNets adjustments – required to the Form K-1 for each beneficiary of the family trust, including Harold. The IRS disallowed for 2002 any distribution of loss by the family trust to the beneficiaries.

On February 26, 2008, the IRS notified Harold, as a beneficiary of the family trust, of adjustments to the family trust's return and of Harold's resulting additional tax liability for 2001 of more that $500,000. Harold paid the additional tax and interest for 2001 by a payment on June 2, 2008, and another payment on October 2, 2008. This is the overpayment contested in this action, and the taxpayers claim the two-year limitation runs from those two days.

On February 28, 2008, the IRS – by issuing a "notice of deficiency" rather than by making a "computational adjustment" – notified Harold, again as a beneficiary of the family trust, of adjustments to the family trust's return and of

Harold's resulting additional tax liability for 2002 of more than $475,000, which Harold paid (and which is not at issue in this action).

On June 3, 2009, the family trust amended the 2001 return and claimed for 2001 a net operating loss deduction, which the trustee had elected to "carry back" from the family trust's 2002 return (owing to the IRS's disallowing a distribution of the loss to the family trust's beneficiaries for 2002) and which reduced the distributable (and taxable) income of the family trust and, derivatively, reduced the income taxable to the beneficiaries, including Harold, for 2001. On August 14, 2009, the taxpayers, including Harold, claimed a refund for 2001 of about $585,000. In late December, the IRS paid a refund of $670,493.78 (including interest) to the taxpayers. Now asserting that the taxpayers' claim for the refund was untimely, the IRS sues to recover the refund.

*****

Section 6511(a),[3] the limitation generally applicable to a claim for a refund, states:

> **Claim for credit or refund** of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return **shall be filed by the taxpayer within** 3 years from the time the return was filed or **2 years from the time the tax was paid**, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid. (emphasis supplied)

---

[3] Unless otherwise specified, each statutory section cited in this order appears in Title 26 of the United States Code.

- 4 -

As applied in the present circumstance and stated simply and directly, Section 6511(a) permits a taxpayer two years after payment of the tax in which to claim a refund.  The parties stipulate that the taxpayers paid the tax in June and October, 2008, and claimed the refund in August, 2009, comfortably sooner than two years after paying the tax.  In other words, to deny the taxpayers' refund, the IRS must identify and apply some other measure of timeliness (that is, a measure other than the measure in Section 6511(a), the measure both the taxpayers and the IRS applied when the taxpayers paid the tax and claimed the refund and when the IRS paid the refund).  The IRS contends the "other measure" is Section 6230(c)(2)(B)(i).  The IRS states, "The parties agree that the sole issue in this case is whether the refund claim of . . . Taxpayers . . . for income tax for the year 2001 is subject to the two year time limit set out in I.R.C. § 6230(c)."  (Doc. 17 at 1)

Pursuing that "other measure" of timeliness, the IRS first repairs to Section 6511(g), entitled "special rule for claims with respect to partnership items," which states:

> In the case of any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (as defined in section 6231(a)(3)), the provisions of section 6227 and subsections (c) and (d) of section 6230 shall apply in lieu of the provisions of this subchapter.

Reading Section 6511(g) with comprehension and confidence in the drafter is complicated by the statute's nonsensical notion "any person which is attributable to any partnership item," which phrase features a grossly and distractingly (yet

- 5 -

typically) misplaced modifier. But, assuming that Section 6511(g) means not the expressed nonsense (that is, "any person which is attributable to any partnership item") but means a "tax . . . which is attributable to any partnership item," the statute becomes less contorted. Restated simply and directly, Section 6511(g) requires in the present circumstance that if a pertinent tax is "attributable to" a "partnership item" as defined in Section 6231(a)(3), the limitation of Section 6230(c)(2)(B)(i) applies, not the limitation in Section 6511(a). Section 6230(c)(2)(B)(i) requires that a claim of refund occur within "two years of the day on which the settlement is entered . . . ." In this action, the choice of the applicable limitation depends on whether the overpayment by the taxpayer is attributable to a non-partnership item (the taxpayers so contend) or "attributable to any partnership item" (the IRS so contends).

Commendably entitled "partnership item," Section 6231(a)(3) states:

> The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

Section 6231(a)(3) offers two principles – one direct and one indirect – useful in resolving the present action. First, the direct principle: the initial clause of Section 6231(a)(3)'s definition restricts the term "partnership item" to "any item required to be taken into account for the partnership's taxable year under any provision of

subtitle A," which comprises the first six chapters of Title 26. Nothing in subtitle A requires the trustee's carry back of loss from 2002 to 2001 (or from any year to any other year) "to be taken into account" by the partnership (in the partnership's taxable year or in any other year). This defect is fatal to any notion that the family trust's carry back is a "partnership item."

Next, the indirect principle: Section 6231(a)(3) purports to offer a second component of the definition of "partnership item" but, deftly avoiding usefulness, yields at the defining moment to a remote and unspecified regulation. The pertinent regulation, 26 C.F.R. § 301.6231(a)(3), which is mostly a list of the recognized "partnership items," includes a commencement that establishes a signal equation. The regulation's commencement states that the listed "items . . . are more appropriately determined at the partnership level than at the partner level" – here comes the signal equation – "and therefore are partnership items" (not "presumptively" or "rebuttably" or "usually" or another of the law's malleable and ephemeral commitments, but the steady and reliable "therefore"). The list in Section 301.6231(a)(3) is lengthy, undisputed, and not worthy of repetition, but the list includes an array of items each of which is determined "at the partnership level" by and for both the partnership and the partners (e.g., the partnership's and each partner's income, gain, and loss; partnership liabilities; guaranteed payments; adjustments to the basis of partnership property; and the like). The logic of Section 301.6231(a)(3)'s list of partnership items – items "appropriately determined

- 7 -

at the partnership level rather than at the partner level" – is manifest and consistent and entirely excludes the notion that a "partnership item" includes the occasion of an independent and discretionary decision by the trustee of a trust to carry back loss to a preceding year and to create in a beneficiary a right to a refund resulting from the beneficiary's overpayment of the beneficiary's taxes.  In fact, the IRS concedes (reluctantly but necessarily) that the trustee's carry back to 2001 of the 2002 loss is not itself a "partnership item."

Although the statute and the regulations preclude any cogent argument that the trustee's carry back of loss is directly a "partnership item," the limitation in Section 6230(c) employs the distinctive phrase "attributable to any partnership item." The question consequently arises whether and to what extent the phrase "attributable to," appended to the phrase "any partnership item," triggers the limitation applicable to an item only indirectly and remotely affected by an adjustment to a partnership item.  In other words, the question arises whether the statutory term "attributable to" in the Section 6230(c) limitation encompasses an extended sequence of events – a boundless concatenation of causes and effects, regardless of intervening causes and effects – remotely traceable in fact to an adjustment in a partnership item but neither decided nor decidable "at the partnership level."

The IRS formalizes this attempted but improbable elongation by evoking an old and familiar term.  The IRS attempts to revive and import a "but for" test to govern application of the phrase "attributable to any partnership item."  In the

- 8 -

response to the taxpayers' motion for summary judgment, the IRS delineates the proposed "but for" test in the facts of this action:

> The IRS entered into a settlement agreement with Yankees Holdings which settled the amount of a partnership loss of YankeeNets for 2002. The partnership loss is a partnership item as defined under I.R.C § 6231(a)(3) and Treas. Reg. 301.6231(a)(3)-1. The Trust used the partnership loss in 2002 in creating a net operating loss for the Trust for 2002. The Trust then carried the net operating loss back to 2001 to offset Trust income for 2001. This reduction in Trust income reportable for 2001 caused a reduction in 2001 taxable income flowing from the Trust to the Defendants since Mr. Steinbrenner is a beneficiary of the Trust. As a consequence of the reduced taxable income, the Defendants had overpaid their income tax for 2001 and filed the claim for refund at issue in this case. Thus, the refund claim is attributable to the use of this partnership loss. **But for the partnership loss, no overpayment of tax would have resulted**.

(Doc. 17 at 2) (emphasis added).

The IRS's proposed "but for" test imputes to the term "attributable to any partnership item" a seemingly boundless scope, a chain of causation linking back to the "first cause" and linking forward, unbroken, to the "final effect," regardless of intervening causes and effects. Needless to say, except in the advocacy papers of the IRS, this aggressive but unmanageable "but for" test appears nowhere in pertinent history and certainly neither in the statute nor in the regulations. Also needless to say, the judiciary has considered and rejected the IRS's proposed "but for" test.

For example, in *Monti v. United States*, 223 F.3d 76 (2d Cir. 2000), the IRS refused "to offer consistent settlement terms to non-settling partners" who brought a refund action in district court. Section 6224(c)(2) obligates the IRS to offer to a non-settling partner the same terms achieved by another partner who settles with the

IRS under Section 6224(b). Because the applicable jurisdictional statute denies the district court original jurisdiction of a refund action "attributable to partnership items (as defined in section 6231(a)(3))," *Monti* addresses the same issue presented in the present action: What is "attributable to any partnership item"? *Monti* holds:

> [The partners'] claim that they were deprived of their right to consistent terms is not attributable to a partnership item because a decision on [the partners' right to consistent terms] depends on facts unique to [the partners] and unconnected with the resolution of partnership-wide issues. [The partners] conclude that because the refund they seek is attributable to this nonpartnership item the district court had jurisdiction over their claims. We agree.

223 F.3d at 82.

*Monti* describes the operative boundary of the term "attributable to a partnership item" and explains that the partners' claim for a consistent settlement depends on the facts of the individual partner's circumstance and not the facts of the partnership's circumstance. Stated differently, the pertinent determination is attributable to a non-partnership item and not to a partnership item.

Not surprisingly, *Monti* discusses – in slightly different terms – and rejects the IRS's proposed "but for" test. The Second Circuit's analysis in *Monti* warrants repetition in full:

> At some level of generality, of course, most refund actions involving the taxation of a partnership can be described as seeking a refund "attributable to partnership items," I.R.C. § 7422(h). In the absence of partnership income or loss, both partnership items, there would be no taxes in the first place; in the absence of claimed partnership deduction, perhaps, no FPAA. But such a reading of the phrase "attributable to partnership items" would make most or all refund claims arising out of the taxation of partnerships, even those entirely

> about and entirely dependent on facts peculiar to a single partner, claims for refunds "attributable to partnership items."  To blur or erase in that manner the distinction between proceedings involving partnership items and those involving nonpartnership items would be contrary to the system of separate treatment of partnership and nonpartnership issues Congress established by enacting TEFRA.

223 F.3d at 82.

*Monti* confirms that, if the phrase "attributable to partnership items" is viewed "at some level of generality" – by which the Second Circuit means some abstruse level of generality – "most refund actions spawned by an issue of partnership taxation are attributable to partnership items." *Monti* holds that, viewed at the more immediate and practical level of generality prescribed by the regnant partnership taxation statute, a matter is not "attributable to a partnership item" if the matter is "entirely dependent on the facts peculiar to a single partner."  In *Monti*, the IRS's proposed "but for" test, poised at some unspecified but decidedly ethereal level of generality, threatens to subsume the distinction between a non-partnership item and a partnership item and, consequently, to frustrate "the system of separate treatment of partnership and non-partnership issues Congress established . . . ," as *Monti* says.  As the taxpayers astutely observe (Doc. 16 at 16), "[D]istinguishing between a refund attributable to partnership items and a refund attributable to items that were, in turn, attributable to partnership items, is the only way to give effect to the statutory language . . . ."  The "but for" test proposed by the IRS in the present action is nothing but the ethereal "some level of generality" test debunked by the Second

- 11 -

Circuit thirteen years ago in *Monti* and debunked elsewhere both before and after. *See Rigas v. United States*, 486 F. App'x 491, 501-02 (5th Cir. 2012); *Field v. United States*, 328 F.3d 58 (2d Cir. 2003); *Prochorenko v. United States*, 243 F.3d 1359 (Fed. Cir. 2001).

     To recapitulate briefly, the IRS settled a tax dispute with two partnerships subject to a unified examination under TEFRA. As a result, the partnerships flowed through additional losses for 2002 to a partner that is a family trust. The IRS disallowed for 2002 a distribution of the loss to the beneficiaries by the trustee. Choosing among the alternatives available to him in the family trust (a partner), the trustee elected to carry back the losses to 2001, which resulted in a beneficiary's realizing an overpayment for 2001 and successfully seeking a refund for 2001. Because the trustee's determination to carry back the loss to an earlier year is a matter determined by the trustee and depending on the circumstances of the family trust (that is, determined at the partner level) and not a matter determined at the partnership level and depending on the circumstances of the partnership, the trustee's determination to carry back loss is neither a partnership item nor attributable to a partnership item. Both the IRS's independent action in denying distribution of loss by the trustee for 2002 and the trustee's choice among alternatives (whether, for example, to contest the IRS's determination for 2002 or carry back loss to 2001 or to another year) intervene unmistakably and inarguably to interrupt any chain of

causation or any hint of attribution (a "straight line," as the IRS says) between a partnership item and the beneficiary's refund. The trustee's decision to carry back the loss to 2001 (or another year) rather than to contest the IRS's disallowance for 2002 was detached, causatively and otherwise, from any partnership item and from attribution to any partnership item.

The IRS finally rests the attempt in this action to recover the taxpayers' refund on the view (Doc. 17 at 11) "that the Trust's carryback net operating loss is an affected item that occurs between the partnership loss and the refund." The IRS immediately explains that Section 6231(a)(5) defines an "affected item" as "an item affected by a partnership item." (Doc. 17 at 11) The IRS moves stealthily through the next sentences. Employing a form of double negative, the IRS declares, "But Defendants' conclusion that their refund is thus not attributable to a partnership item is erroneous" (that is, "not attributable" is "not correct"). In this sentence, the IRS uses the term "attributable to," but Section 6231(a)(5) – which defines an "affected item" – uses the term "affected by." Of course, "affected by" any partnership item and "attributable to" any partnership item are statutory terms that differ critically in meaning; the IRS conflates the terms and erroneously uses the terms as functional synonyms.

The IRS says, "We agree with the Defendants that the Trust's carryback net operating loss is an affected item . . . ." But, in fact, the taxpayers eschew a final conclusion about an affected item and comment most persuasively:

- 13 -

> It is debatable whether the Trust's net operating loss is even an affected item. Changes to partnership items impacted the amount of the loss, but the existence of a net operating loss as opposed to a negative income distribution deduction is not affected by any partnership item. *Cf. Electrolux Holdings, Inc. v. United States*, 491 F.3d 1327, 1332 (Fed. Cir. 2007) (finding it immaterial that the amount of an overpayment was affected by a carryback when applying the exception in I.R.C. § 6511(d)(2) for refund claims that relate to an "overpayment attributable to . . . a capital loss carryback," because "it is the fact of the overpayment, not the amount, that must be attributable to the carryback"). The distinction between a nonpartnership item and a substantive affected item, however, is immaterial here, because the law is clear that the regular refund procedures in I.R.C. § 6511 apply in either case.

(Doc. 18 at 9 n.2).

The taxpayers in the alternative assume for the sake of argument that the family trust's net operating loss is an affected item, but the taxpayers indulge the assumption only momentarily and only to demonstrate a distinction, fatal again to the IRS's argument, between the two categories of affected items: computational items and substantive affected items. Generally, a computational adjustment applies to a partner's return to change the amount of the partner's tax, which change is consequent upon the result of a unified partnership proceeding that changed the treatment of a partnership item at the partnership level. (An unsurprisingly awkward definition of "computational adjustment" appears in Section 6231(a)(6).) As stated more helpfully by the IRS:

> An "affected item" is any item on a partner's return to the extent that it is affected by a partnership item. . . . Affected items can be the subject of computational adjustments (which the Service can make to reflect the adjustment of partnership items without issuing a notice of deficiency) . . . or adjustments that require a factual determination at

- 14 -

> the individual partner level (using the deficiency procedures). . . . **By definition, affected items are not partnership items; thus, they are not subject to determination at the partnership level. Section 6230(a)(2)(a)(i) authorizes the Service to issue a notice of deficiency for affected items that require partner level determinations**.

Internal Revenue Service, Field Service Advisory 200144006, 2001 WL 1347151 (emphasis added).

In other words, the statute, the regulations, and the IRS's literature agree in concert that an affected item is not a partnership item and not an item susceptible of determination at the partnership level but an item affected by a partnership item (not "attributable to" a partnership item). If an affected item is susceptible to adjustment without a notice of deficiency and without determination of matters at the partner level, the matter is a computational affected item. If the matter "requires partner level determinations" and requires a notice of deficiency, the matter is a substantive affected item. In this instance, the taxpayers received a notice of deficiency for 2002; the reason for, and the necessity of, a notice of deficiency is doubted nowhere (except in the advocacy papers of the IRS in this action).

At this juncture, an important historical matter of Congressional purpose confirms the result in this action:

> Although partnerships do not pay federal income tax, each partner is individually liable for income taxes relating to his or her distributive share of partnership income, gain, loss, deduction and credit. . . . Prior to 1982 adjustments of partnership items were determined at the individual partners' level, resulting in duplication of administrative and judicial resources and inconsistent results between partners.

- 15 -

> To solve this problem, Congress enacted the Tax Treatment of
> Partnership Items Act of 1982, as Title IV of the Tax Equity and Fiscal
> Responsibility Act of 1982 (TEFRA), Pub.L. No. 97-248, 96 Stat. 324,
> 648 (codified as amended at I.R.C. §§ 6221-6233 (1988 & Supp. IV
> 1992)), which created a single unified procedure for determining the
> tax treatment of all partnership items at the partnership level.  A
> "partnership item" is one "more appropriately determined at the
> partnership level than at the partner level," I.R.C. § 6231(a)(3), and
> includes "[t]he partnership aggregate and each partner's share of . . .
> [i]tems of income, gain, loss, deduction, or credit of the partnership."
> . . .  A "nonpartnership item" is one that is "not a partnership item,"
> I.R.C. § 6231(a)(4), and is therefore determined at the individual
> partner's level.  As a consequence, assessments for nonpartnership
> item adjustments are subject to the statutory notice of deficiency
> procedure.  I.R.C. §§ 6212(a) (1988); 6230(a)(2).

*Randall v. United States*, 64 F.3d 101, 104-05 (2d Cir. 1995); *Madden v. Internal Revenue Service*, 77 A.F.T.R. 2d 96-1982, 96-1 USTC ¶ 50,263, 1996 WL 383246 (Bkrtcy. D.N.J. 1996).  Among the principal purposes of TEFRA was to establish the boundary that the IRS, apparently in a misbegotten irredentist effort after TEFRA, seeks impermissibly in this action to disestablish, impinge, blur, or selectively ignore.

The parties differ as to the interpretation and effect of a statutory change accomplished by the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, 111 Stat. 787. Section 1239(c)(1) of the Taxpayer Relief Act of 1997 changed Section 6230(d)(6) by deleting the words – and the parentheses – "(or an affected item)." So, before the Taxpayer Relief Act of 1997, Section 6230(d)(6) stated:

> Subchapter B of chapter 66 (relating to limitations on credit or refund)
> shall not apply to any credit or refund of an overpayment attributable
> to a partnership item (or an affected item).

After the Taxpayer Relief Act of 1997, Section 6230(d)(6) states:

> Subchapter B of chapter 66 (relating to limitations on credit or refund) shall not apply to any credit or refund of an overpayment attributable to a partnership item.

The taxpayers assert, "It could not be more clear that the exception to the regular refund procedures in I.R.C. § 6511(g) and I.R.C. § 6230(d)(6) applies only to a refund of an overpayment attributable to a partnership item, and not [to] a refund attributable to an affected item." Except that no one should use the phrase "it could not be more clear" in discussing the IRC, the taxpayers argue convincingly that the 1997 statutory deletion unmistakably reveals congressional intent to withdraw the statutory instruction to treat alike the refund of an overpayment attributable to a partnership item and the refund of an overpayment attributable to an affected item. In other words, the 1997 amendment results in different treatment, on one hand, for the refund of an overpayment attributable to a partnership item and, on the other hand, for the refund of an overpayment attributable to an affected item. Tellingly, the taxpayers argue in this action for different treatment of the two and the IRS argues for identical treatment of the two.[4]

---

[4] The IRS responds to congressional deletion of "(or an affected item)" from the statute with the astounding argument that "[the taxpayers] fail to identify any legislative history providing the intent behind this change." First, the intent is manifest. Second, parsing legislative history and identifying isolated episodes in an effort to determine statutory meaning constitutes (under the best circumstances) a difficult, dicey, and often deceptive endeavor. *Thompson v. Thompson*, 484 U.S. 174, 191-92 (1988) (Scalia, J., concurring) ("Committee reports, floor speeches, and even colloques between Congressmen . . . are frail substitutes for bicameral vote upon the text of a law and its presentment to the President. . . . It is at best dangerous to assume that all the necessary participants in the law-enactment process are acting upon the same unexpressed assumptions."); *Weinberger v. Rossi*, 456 U.S. 25, 35 n.15 (1982) ("The contemporaneous remarks of a sponsor of legislation are certainly not controlling in analyzing legislative history."); 2A Norman J. Singer, *Statutes and*

(continued...)

The IRS argues, albeit unsuccessfully, that the applicable limitation in this action is Section 6230(c)(2)(B)(i), which applies as prescribed in Section 6230(c)(1)(B), if "the Secretary failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to application to the partner of a settlement." Attention to the pertinent history of the partnerships, the pertinent history of the family trust, and the pertinent history of the taxpayers (one of whom is a beneficiary of the family trust) brings immediately to mind an array of reasons for the inapplicability of Section 6230(c)(1)(B).

For example, Section 6230(c)(1)(B) covers failure by the IRS to refund to a partner, but no partner claims a refund in this action (a family trust beneficiary claims a refund). Section 6230(c)(1)(B) covers a refund for an overpayment "attributable to" the application of a settlement to a partner, but the overpayment in this action was by Harold as a beneficiary of a family trust, the trustee of which carried back to Harold loss from 2002 to 2001, which resulted in an overpayment. The only reasons the trustee of the family trust chose to carry back loss from 2002 to 2001 was, first, because the family trust's income was insufficient to offset the incremental loss and, second, because the IRS disallowed the 2002 distribution of the loss. Neither the

---

[4] (...continued)
*Statutory Construction ("Sutherland Statutory Construction")* § 48:12 (6th ed. 2000) ("A lone legislator is not competent to testify about the intent of a statute, even if he or she authored it. There is not necessarily a correlation between the understanding and intent of a draftsman and the understanding and intent of the legislature."). The plain meaning of enacted statutory words, including the words of an amendment, governs without awaiting confirmation from an unelected congressional staff, a pronouncement from a witness at a hearing, or the view of the drafter, the sponsor, or a committee.

state of the family trust's operating loss nor the IRS's disallowance of loss distribution in 2002 is "the application to the partner of a settlement" within the meaning of Section 6230(c)(1)(B).  Neither the trustee, the family trust, nor the beneficiary is a party to the settlement and the matters resulting in the carry back and the consequent overpayment are neither governed by, nor within the reach of, nor even susceptible to, a settlement between the IRS and the partnership, Yankees Holdings.  So, Section 6230(c)(2)(B)(i) is not the limitation applicable in this action because, in addition to the other reasons described in this order, Section 6230(c)(1)(B) is inapplicable on its face.

## CONCLUSION

The plaintiff's motion (Doc. 17) for summary judgment is **DENIED**, and the defendants' motion (Doc. 16) for summary judgment is **GRANTED**.  The Clerk is directed to enter a judgment for Harold and Christina Steinbrenner and against the United States.

ORDERED in Tampa, Florida, on June 7, 2013.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE